# EXHIBIT 1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

KATINA KOETH, Individually, and as
Mother and Next Friend of JOSEPH KOETH,
a Minor,

        Plaintiffs,

v.

MEAD JOHNSON & COMPANY, LLC and
MEAD JOHNSON NUTRITION
COMPANY,

        Defendants.

No.: **2021L011151**

### SUMMONS

**To each defendant:**    **Mead Johnson Nutrition Company**
                     **Registered Agent: Illinois Corporation Service**
                     **801 Adlai Stevenson Drive**
                     **Springfield, IL 62703**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required **fee within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information. **If you fail to do so, a judgment by default may be entered against you for the relief requested in the Complaint.**

**To the officer: This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.**

**E-filing is not mandatory for document sin civil cases with limited exceptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.**

Elizabeth A. Kaveny
KAVENY + KROLL, LLC
130 E. Randolph St., Suite 2800
Chicago, IL 60601
Firm I.D. No. 63499
312.761.5585
E-service: angelina@kavenykroll.com

WITNESS:_____
11/16/2021 3:45 PM IRIS Y. MARTINEZ



Clerk of the Circuit Court

Date of Service:_____
(To be inserted by officer on copy
Left with defendant or other person)

FILED
11/16/2021 3:45 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
15625635

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

KATINA KOETH, Individually, and as ）
Mother and Next Friend of JOSEPH KOETH, ）
a Minor, ）
                             ）
            Plaintiffs, ）     Case No: **2021L011151**
    vs. ）
                             ）
MEAD JOHNSON & COMPANY, LLC and ）
MEAD JOHNSON NUTRITION COMPANY, ）
                             ）
          Defendants. ）     JURY TRIAL DEMANDED

### COMPLAINT

NOW COMES, Plaintiffs, KATINA KOETH, Individually, and as Mother and Next Friend of JOSEPH KOETH, by and through their attorneys, Levin, Ro as, Camassar, and Reck, LLC and KAVENY + KROLL, LLC, and complaining of Defendants, MEAD JOHNSON & COMPANY, LLC, and MEAD JOHNSON NUTRITION COMPANY (collectively Defendant, MEAD JOHNSON ). Plaintiffs allege as follows:

### NATURE OF THE ACTION

1.    This action arises out of the in uries suffered by JOSEPH KOETH ( aby Joey ) when, as a preterm infant, he was fed Defendants' cow's milk-based infant formula products.

2.    Those cow's milk-based infant formula products produced and introduced into the market by Defendant, MEAD JOHNSON, caused aby Joey to develop **Necroti ing Enterocolitis** ( **NEC** ), a devastating and often lethal disease that largely affects preterm babies who are given cow's milk-based formula products.

3.    Plaintiff, KATINA KOETH, brings this cause of action against Defendants to recover for in uries that are the direct and proximate result of aby Joey's consumption of Defendant, MEAD JOHNSON's unreasonably dangerous cow's milk-based infant formula products.

## **PARTIES**

4.     Plaintiff, KATINA KOETH, is a resident of Nevada and the mother of  aby Joey.

5.     Defendant, MEAD JOHNSON NUTRITION COMPANY, is a corporation incorporated under the laws of the State of Delaware. Its principal place of business is located in Chicago, Illinois. Mead Johnson lists its global headquarters as 225 North Canal Street, 25th Floor, Chicago, IL 60606 USA.[1]

6.     Defendant, MEAD JOHNSON & COMPANY, LLC, is a limited liability company, organized under the laws of the State of Delaware. Its citizenship is that of its sole member, Mead Johnson Nutrition Company.

7.     Defendants, MEAD JOHNSON NUTRITION COMPANY and MEAD JOHNSON & COMPANY, LLC (collectively,  Defendant, MEAD JOHNSON ), are manufacturers of cow's milk-based infant formula products and markets many of its products under the  Enfamil  brand name, including but not limited to Enfamil Premature Infant Formula.

## **JURISDICTION AND VENUE**

8.     This Court has general  urisdiction over this action because Defendant, MEAD JOHNSON, maintains its principal place of business in Chicago, Illinois. 735 Ill. Comp. Stat. Ann. 5 2-209  *see also Rios v. Bayer Corp.*, 2020 IL 125020,   19 (June 4, 2020) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

9.     Venue is proper in Cook County because Defendant, MEAD JOHNSON, conducts business there and lists its global headquarters as 225 North Canal Street, 25th Floor, Chicago, IL 60606 USA. 735 ILCS 5 2-101  735 ILCS 5 2-102(a).

---

[1] *See* https:  www.mead ohnson.com company contact-us.

### FACTUAL ALLE ATIONS

#### *Baby Joey's NEC Diagnosis*

10.     aby Joey was born at Summerlin Hospital in Las Vegas, Nevada on November 12, 2015.

11.     aby Joey was born preterm at 29 weeks, 3 days gestation, weighing 1590 grams, approximately 3  pounds.

12.     At birth,  aby Joey's brain and heart were both healthy and normal.

13.     On November 13, 2015,  aby Joey was first fed Defendant, MEAD JOHNSON'S product, **Enfamil Premature Formula**, which is a cow's milk-based formula.

14.     On November 22, 2015,  aby Joey was noted to have a large residual and was confirmed by  -ray to have developed NEC.

15.     On November 23, 2015,  aby Joey was brought to the operating room for the first time for an exploratory laparotomy during which 6 centimeters of his ileum was removed. His remaining intestines were placed in a silo  a plastic bag held over his body  so that surgeons could continue to monitor the viability of his bowels.

16.     On November 27, 2015,  aby Joey underwent a second-look surgery during which an additional 50 centimeters of small bowel was removed, along with another 2 centimeters of ileum, leaving  aby Joey with  ust 30 centimeters of remaining small bowel, approximately one-sixth of what a normal preterm infant of his gestation age would be expected to have.

17.     Following the traumatic events of November 27, 2015,  aby Joey developed severe intraventricular hemorrhage, periventricular leukomalacia, and obstructive hydrocephalus, causing permanent and irreversible brain damage and cerebral palsy.

18.     Over the course of his 124-day NICU stay,   aby Joey underwent three exploratory laparotomies, a surgery to place an Ommaya Reservoir into his brain, and a broviac catheter insertion.

19.     During that same NICU stay,   aby Joey's pain was so severe that he developed Neonatal Abstinence Syndrome after prolonged exposure to opioids for pain management following his NEC diagnosis.

20.     aby Joey is now six (6) years old.

21.     Since his NICU discharge,   aby Joey has continued to suffer from long-term impacts of NEC, including but not limited to short gut syndrome and cerebral palsy.

### *Necrotizing Enterocolitis (NEC) and Cow's Milk-Based Feeding Products*

22.     NEC is a severe gastrointestinal disorder which develops when harmful bacteria grow within and breach the walls of the intestine, causing portions of the intestine to become inflamed and die.

23.     Once NEC develops, the condition can progress rapidly from mild feeding intolerance to systemic and fatal sepsis.

24.     Up to 30 percent of infants diagnosed with NEC die from NEC.

25.     Preterm and low birth weight infants are especially susceptible to NEC because of their underdeveloped digestive systems.

26.     NEC is the most frequent and most lethal gastrointestinal disorder affecting preterm infants.

### *Mead Johnson's Enfamil Cow's Milk-Based Products*

27.     Defendant, MEAD JOHNSON's Enfamil Premature Infant Formula is a cow's milk-based product.

28.     Numerous studies spanning decades have established that cow's milk-based formula products significantly increase the risk of NEC in preterm and low birth weight infants.[2]

29.     y contrast, human-milk based formula products are proven to reduce the incidence of NEC in preterm and low birth weight infants, especially NEC which requires surgical intervention.[3]

30.     At all times relevant herein, Defendant, MEAD JOHNSON's Enfamil cow's milk-based products were unreasonably dangerous in that use of those products unnecessarily and significantly increased the risk of NEC in infants and replaced the nutritionally safer and superior human milk-based products.

31.     At all times relevant herein, Defendant, MEAD JOHNSON's Enfamil cow's milk-based products were unreasonably dangerous to preterm and low birth weight infants in that they significantly increased the risk that the infant would develop NEC.

32.     At all times relevant herein, Defendant, MEAD JOHNSON's Enfamil cow's milk-based products were unreasonably dangerous to preterm and low birth weight infants in that they significantly increased the risk that the infant would die.

33.     At all times relevant herein, it was well-known that use of such products caused and or contributed to cause an increased risk of infants developing NEC.

---

[2]   y way of example, one study established that NEC was *six to ten* times more common in exclusively cow's milk formula-fed babies than in exclusively human breast milk-fed babies and ***three times*** more common in babies who received a combination of formula and breast milk. Lucas A, Cole T. *Breast milk and neonatal necrotising enterocolitis.* Lancet 1990  336: 1519  1523.

[3]   For instance, a randomized controlled trial showed that preterm babies fed an exclusive human milk-based diet were ***90% less likely*** to develop surgical NEC (NEC that requires surgical treatment), compared to preterm babies fed a diet that included some cow's milk-based products. Sullivan, S., et al, *An Exclusively Human Milk-Based Diet Is Associated with a Lower Rate of Necrotising Enterocolitis than a Diet of Human Milk and Bovine Milk-Based Products. (Journal of Pediatrics 2010; 156:562-7).*

34.     At all times relevant herein, Defendant, MEAD JOHNSON, was aware of the significantly increased risk of NEC, devastating in uries, and or death associated with use of its cow's milk-based products, especially in preterm and low birth weight infants.

35.     At all times relevant herein, Defendant, MEAD JOHNSON, was aware or should have been aware that its Enfamil cow's-milk based product was not safe for use as it was used with preterm infants like   aby Joey, yet it took no steps to prevent its use in such a situation.

36.     Defendant, MEAD JOHNSON, foresaw or should have foreseen that its Enfamil cow's milk-based products would be used as they were with infants like   aby Joey, and knew or should have known that such use would significantly increase the risk of NEC in   aby Joey, yet it took no steps to prevent such use.

37.     Defendant, MEAD JOHNSON's Enfamil cow's milk-based products were not safe to be used as they were with infants like   aby Joey, and Defendant, MEAD JOHNSON, knew or should have known they were unsafe, yet it failed to properly instruct and or warn the FDA, NICUs, hospitals, doctors and parents that its products were not safe.

38.     Defendant, MEAD JOHNSON's Enfamil cow's milk-based products were not safe to be used as they were with infants like   aby Joey and Defendant, MEAD JOHNSON, knew or should have known they were unsafe, yet it failed to provide detailed instructions or guidelines on when and how its products would be safe to use with a preterm infant.

39.     Defendant, MEAD JOHNSON's Enfamil cow's milk-based products caused   aby Joey to develop NEC.

### *Safer Alternatives*

40.     In 2012, the American Academy of Pediatrics ( AAP ) issued a policy statement that **all** preterm infants should be fed either their mother's milk or, if their mother's milk is

unavailable, pasteurized human donor milk, based on the potent benefits of human milk, including lower rates of . . . NEC. [4]

41.     At all times relevant herein, it was well-known that human milk was the best source of nutrition for preterm and low birth weight infants and those otherwise at risk for NEC.

42.     At all times relevant herein, it was well-known that a diet based exclusively on human milk and human milk-based products provided all the nutrition necessary to support preterm and low birth weight infants without the elevated risk of NEC associated with cow's milk-based products.

43.     At all times relevant herein, a range of options were available that allowed preterm and low birth weight infants to be fed exclusively human milk-based nutrition.

44.     At all times relevant herein, there existed the much alternative of mother's own breast milk or donor breast milk.

45.     At all times relevant herein, hospitals had access to shelf-stable formula and milk fortifiers derived from pasteurized human breast milk.

46.     At all times relevant herein, a mother's own breast milk, donor breast milk, or formula and milk fortifiers derived from pasteurized human breast milk were all safer alternatives to cow's milk-based formula and milk fortifiers, especially for preterm or low birth-weight infants.

### Mead Johnson's Misleading Marketing of Enfamil

47.     Despite being aware of the significantly increased risk of NEC, devastating in uries, and or death associated with use of its cow's milk-based products especially in preterm and low birth weight infants Defendant, MEAD JOHNSON, engaged in a deceptive marketing campaign in

---

[4] Pediatrics 2012 129:e827-e841, *Breastfeeding and the Use of Human Milk.*

which they misled parents of preterm and low birth weight infants into believing its products were safe and necessary for the growth of those infants.

48.     Notwithstanding strong medical evidence establishing the extreme dangers that cow's milk-based products posed for preterm and low birth weight infants, Defendant, MEAD JOHNSON, marketed its cow's milk-based products as equally safe and nutritionally equivalent alternatives to human milk and have promoted its products as necessary for additional nutrition and growth.

49.     At all relevant times, Defendant, MEAD JOHNSON, maintained a website which promoted a range of products specifically for  premature and low weight  babies and made claims regarding Enfamil's ability to increase the babies' weight and caloric intake.

50.     Defendant, MEAD JOHNSON's website falsely boasted its commitment to science and claimed that  Enfamil is backed by decades of breast milk research and multiple clinical studies  and that  to create  their  best formulas,  they  collaborated on some of the most extensive breast milk studies to date.

51.     Defendant, MEAD JOHNSON's Enfamil website also specifically targeted parents of premature and low birth weight infants by emphasizing the need for  catch-up growth,  which could be achieved by feeding the infant the Enfamil product  Enfacare  as it was  c linically shown to promote catch-up growth similar to full-term breastfed infants.

52.     Defendant, MEAD JOHNSON's website devoted to Enfamil Premature Formula boasts that it  helps achieve the catch-up growth  premature infants need  Enfamil Premature  Formula  has increased levels of important nutrients that help promote the catch-up growth of your precious little one.

53.     The webpage for Enfamil Premature Infant Formula states:  Nutrition that's

recommended. Enfamil Premature Formula has amounts of vitamins, minerals, protein, and calories as recommended by experts to bolster the rapid growth of babies born prematurely or at a low birth weight.

54.     The webpage states that Enfamil Premature Formula has brain-building nutrition and immune support.

55.     On a page of the Enfamil website titled, Why Enfamil it states: When it comes to making important choices about your baby's nutrition, there's nothing like a recommendation from a trusted source. Whether it comes from your pediatrician, the hospital where your baby was born, or another mom, using Enfamil gives you the confidence you've made the best choice for your baby.

56.     Defendant, MEAD JOHNSON's Enfamil website gives mothers the illusion of choice by stating that they should take recommendations from pediatricians, hospitals, and other moms. However, as you scroll down the page, the website contains the following:

    a.  The statement that Enfamil is 1 infant formula brand recommended by
        pediatricians.

    b.  The statistic that 80 of birthing hospitals use Enfamil.

    c.  A purported review from Enfamil Mom stating Just wanted to say great ob
        Enfamil Excellent formula by far I work with four other expectant mothers and
        have referred them all to Enfamil.

57.     The Enfamil website creates the illusion that all trusted sources recommend Enfamil and does not reference the extreme dangers their products pose to premature infants.

58.     Plaintiff, KATINA KOETH, saw a Mead Johnson commercial stating that Enfamil was gentle on baby's tummy.

59.     None of Defendant, MEAD JOHNSON's marketing materials including its promotional websites referenced the scientific data showing how significantly its products

increased the risk of NEC, devastating in uries, and death.

60.     Defendant, MEAD JOHNSON's website devoted to its cow's milk-based products was false and misleading as it created the false idea that those products are created based on the latest science and thus are safe for preterm and low birth weight infants, when in fact, science had proven its cow's milk-based products significantly increased the risk of NEC, devastating in uries, and death in preterm and low birth weight infants.

61.     Defendant, MEAD JOHNSON's website was false and misleading as it created a false equivalency between formula and breast milk and intentionally omitted the established fact that cow's milk-based products have been proven to significantly increase the risk of NEC, devastating in uries, and or death in premature and low birth weight infants.

62.     The statements on Defendant, MEAD JOHNSON's website that indicated that its cow's milk-based products were necessary for  catch-up-growth  in preterm and low birth weight infants were false and misleading as they failed to inform of the risk those products posed of the infant developing NEC.

63.     Defendant, MEAD JOHNSON's marketing campaign was designed to make parents believe that its products were safe and necessary for the growth of premature and low birth weight infants despite decades of research that established the fact that cow's milk-based products significantly increased the risk of a premature infant developing NEC, devastating in uries, and death.

64.     aby Joey's parents were exposed to Defendant, MEAD JOHNSON's false and misleading marketing which caused and or substantially contributed to  aby Joey being fed Defendant, MEAD JOHNSON's cow's milk-based products.

65.     aby Joey's parents, members of the medical community, physicians, and hospitals, relied upon the representations and advertising of Defendant, MEAD JOHNSON, which categorically omitted the fact that its cow's milk-based products significantly increase the risk of NEC, devastating in uries, and death in premature infants, which caused and or substantially contributed to the products being fed to    aby Joey.

### *Mead Johnson's Inadequate Warnings*

66.     Upon information and belief, at all times relevant herein, Enfamil Premature Infant Formula, which Defendant, MEAD JOHNSON, marketed specifically as being safe and necessary for premature infants, was available at retail locations and online.

67.     Upon information and belief, at all times relevant herein, no prescription was necessary to obtain Enfamil Premature Infant Formula, which Defendant, MEAD JOHNSON, marketed as being safe and necessary for the growth of premature infants.

68.     Despite being aware of the significantly increased risk of NEC, devastating in uries, and or death associated with use of its cow's milk-based products    especially in preterm and low birth weight infants    Defendant, MEAD JOHNSON, failed to properly warn of the significantly increased risk of NEC, devastating in uries, and or death associated with Enfamil products, nor of the magnitude of this increased risk. *See* Enfamil Premature 24 Label and Enfamil Premature 20 Label, attached hereto as Exhibits  A  and    , respectively.

69.     Despite being aware of the significantly increased risk of NEC, devastating in uries, and or death associated with use of its cow's milk-based products    especially in preterm and low birth weight infants    Defendant, MEAD JOHNSON, did not provide instructions or guidance for how to feed this product in order to avoid NEC, devastating in uries, and or death. *See* Exhibits
A  and    .

70.     Despite knowing that its products were being fed to preterm infants, often without the parents' informed consent, Defendant, MEAD JOHNSON, failed to require or recommend that medical professionals or hospitals inform parents of the significant risk of NEC, devastating in uries, and or death and failed to require or recommend that parental consent be obtained prior to the products being fed to their babies. *See* Exhibits A and .

71.     Despite being aware of the significantly increased risk of NEC, devastating in uries, and or death associated with use of its cow's milk-based products especially in preterm and low birth weight infants Defendant, MEAD JOHNSON, made no changes to its products or the products' packaging, guidelines, instructions, or warnings.

### *The Practice of Silence by Mead Johnson: No Warnings, No Instructions, and No Information Provided to the Parents*

72.     Despite learning that its Enfamil products were linked to NEC, devastating in uries, and or death, Defendant, MEAD JOHNSON, failed to properly collect data from patients, parents, doctors, and hospitals in order to develop evidence-based strategies, instructions, and warnings to reduce or prevent its products from causing NEC, devastating in uries, and or death.

73.     Despite knowing its Enfamil products were causing NEC, devastating in uries, and or death, Defendant, MEAD JOHNSON, took no steps to determine how or why its products were causing NEC, devastating in uries, and or death, and did not conduct comprehensive risk management plans to combat the tragic end results of using its products.

74.     Defendant, MEAD JOHNSON, has learned that its cow's milk-based Enfamil products were causing NEC, devastating in uries, and or death in preterm infants, yet Defendant, MEAD JOHNSON, has done nothing to change its products, packaging, guidelines, instructions, and warnings.

75. Specifically, Despite knowing that its cow's milk-based Enfamil products were causing NEC, devastating in uries, and or death in preterm infants, Defendant, MEAD JOHNSON, did not conduct any testing, data analysis, or research to determine when its products should not be used or when and how its products were safe for use.

76. Moreover, despite knowing that its products were causing NEC, devastating in uries, and or death in preterm infants, Defendant, MEAD JOHNSON, did not contact the FDA to inform them that its products were linked to NEC, devastating in uries, and or death.

77. aby Joey's parents were aware that Defendant, MEAD JOHNSON's products were being fed to aby Joey.

78. None of the products at issue warned of any risk of NEC, devastating in uries, and or death.

79. aby Joey's parents were never told that Enfamil Premature aby Formula could cause and or increase the risk of aby Joey developing NEC.

80. aby Joey's parents were never told that the products could cause and or increase the chance aby Joey could die.

81. aby Joey's parents were never told that the products could cause and or increase the risk that their baby could develop catastrophic brain damage, brain damage, brain bleeds, and cerebral palsy.

82. aby Joey's parents were never told of the studies showing cow's milk-based formula was extremely dangerous to preterm infants like aby Joey.

83. aby Joey's parents were never told of the studies showing that mother's own breast milk and human donor milk were safer for preterm infants like aby Joey.

84.    aby Joey's parents did not question the safety of the products because the brand name  Enfamil  in general, and the products at issue in particular, are marketed as safe and healthy and similar to breast milk and are regularly sold in stores and or used in hospitals.

85.    Defendant, MEAD JOHNSON, has protected its formula brand by deceptively misleading the public and deliberately hiding the fact that Enfamil has been scientifically linked to significantly increasing the risk of NEC, devastating in uries, and death in premature infants for decades, thus causing the general public, including   aby Joey's parents to believe Enfamil was safe.

86.    aby Joey's parents trusted the brand Enfamil and allowed the product to be fed to  aby Joey.

87.    Had   aby Joey's parents known of the significant risk of feeding Enfamil to a preterm infant, they would not have allowed the product to be fed.

88.    Defendant, MEAD JOHNSON, is aware that its Enfamil products do not warn of NEC, devastating in uries, and or death and are aware that doctors and hospitals do not warn of NEC, devastating in uries, and or death before feeding the products to preterm infants.

89.    Defendant, MEAD JOHNSON, has done nothing to inform parents of the increased risk of NEC, devastating in uries, and or death to premature infants fed Enfamil.

90.    This practice of silence furthers the false belief that Enfamil is safe and healthy for premature infants, and continues its significant usage throughout the United States, and places profits ahead of protecting premature infants and their parents.

91.    Defendant, MEAD JOHNSON, has known that its Enfamil products are significantly increasing the risk of NEC, devastating in uries, and or death in preterm infants, and are aware that there are safer alternatives to its cow's milk-based formulas, such as human milk-based products,

that would reduce the risk of NEC, devastating in uries, and or death, yet Defendant, MEAD JOHNSON, has chosen to continue to promote, market, and sell its cow's milk-based products, with no warnings, safety measures, or alerts, which results in the Enfamil products continuing to be fed to preterm infants, causing thousands of babies to be exposed to an unnecessary risk, many of whom will suffer from NEC and or die.

92.     aby Joey's parents never knew, nor should they have reasonably known, that Defendant, MEAD JOHNSON's cow's milk-based food products could cause NEC and or catastrophic in ury.

93.     In order to profit from its cow's milk-based products, Defendant, MEAD JOHNSON, has deliberately hid the extreme dangers of feeding these products to premature infants.

94.     Defendant, MEAD JOHNSON, deliberately promotes its products as safe, backed by science, and as the  1 pediatrician-endorsed infant formula brand.

95.     These advertisements are designed to further the Enfamil brand and to create a false message that the Enfamil brand is safe and nutritious for babies, when in fact, Enfamil significantly increases the risk of NEC, devastating in ury, and death in premature infants.

96.     Knowing that its product was so dangerous to preterm infants, Defendant, MEAD JOHNSON, should have required all doctors, NICUs, and hospitals to warn parents of the increased risk of NEC when feeding this product to premature infants.

97.     Instead, Defendant, MEAD JOHNSON, remained silent and continued to promote its products in the NICUs by giving the product for free or at reduced-price to hospitals.

98.     Had Defendant, MEAD JOHNSON, warned NICUs, doctors, and hospitals of the increased risk of NEC and or death associated with Enfamil as the studies show, it never would have been fed to   aby Joey.

99. Had Defendant, MEAD JOHNSON, required all parents to be warned of the increased risk of NEC and or death associated with Enfamil as the studies show, it never would have been fed to aby Joey.

100. Defendant, MEAD JOHNSON, should be barred from arguing that the statute of limitations has run on unknowing parents whose babies where severely in ured or died, until such time as Mead Johnson finally warns, informs, and instructs the public and the parents that its products significantly increase the risk of NEC and death when fed to premature infants.

## COUNT I: STRICT LIA ILITY DESI N DEFECT

101. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

102. Defendant, MEAD JOHNSON, as the manufacturer and or seller of the products at issue in this litigation, had a responsibility to manufacture, sell, and distribute its products in a manner that was not unreasonably dangerous.

103. Defendant, MEAD JOHNSON's products contained cow's milk at the time they left the manufacturing facility and thus were unreasonably dangerous, especially to preterm and low birth weight infants.

104. At all times relevant herein, an ordinary consumer would not expect Defendant, MEAD JOHNSON's cow's milk-based products to carry a significant risk of serious in ury and death from NEC.

105. At all times relevant herein, Defendant, MEAD JOHNSON, knew or reasonably should have known that cow's milk-based nutrition was unreasonably dangerous to preterm and or low birthweight infants as it carried a significantly increased risk of those infants developing NEC, devastating in ury, and or death.

106.    At all times relevant herein, Defendant, MEAD JOHNSON, knew or reasonably should have known that the risks involved in feeding a preterm and or low birth weight infant cow's milk-based nutrition outweighed the benefits.

107.    At all times relevant herein, Defendant, MEAD JOHNSON, knew or reasonably should have known that human milk-based nutrition did not carry the same risks of NEC, devastating in ury, and or death that its own cow's milk-based products do.

108.    At all times relevant herein, Defendant, MEAD JOHNSON, did not develop a human milk-based product that was safer for premature infants, nor did it reformulate its products to reduce the risk of NEC, devastating in ury, and death.

109.    At all times relevant herein, developing a human milk-based product was economically feasible.

110.    At all times relevant herein, pasteurized human milk was an available alternative.

111.    At all times relevant herein, Defendant, MEAD JOHNSON, knew or reasonably should have known that its cow's milk-based products would be used    unaltered    to feed preterm and or low birth weight infants like    aby Joey.

112.    Defendant, MEAD JOHNSON's cow's milk-based product, Enfamil Premature Infant Formula was in fact fed    unaltered    to    aby Joey.

113.    As a direct and proximate result of    aby Joey ingesting Enfamil cow's milk-based products, he developed in uries of a personal and pecuniary nature, including but not limited to NEC, short gut syndrome, and cerebral palsy.

WHEREFORE, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, demands  udgment against Defendants, MEAD JOHNSON & CO., and MEAD JOHNSON NUTRITION

COMPANY, for a sum in excess of the urisdictional limits of the Circuit Court of Cook County, Illinois.

## COUNT II: STRICT LIA ILITY DESI N DEFECT FAMILY E PENSE ACT

114.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

115.    Plaintiff, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, has become obligated for medical care, support, and expenses for JOSEPH KOETH, a Minor, and hereby makes a claim for same pursuant to 750 ILCS 665-15, commonly known as The Family Expense Act.

WHEREFORE, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, demands udgment against Defendants, MEAD JOHNSON & CO., and MEAD JOHNSON NUTRITION COMPANY, for a sum in excess of the urisdictional limits of the Circuit Court of Cook County, Illinois.

## COUNT III: STRICT LIA ILITY FOR FAILURE TO WARN

116.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

117.    Defendant, MEAD JOHNSON, as the manufacturer and or seller of the infant products at issue in this litigation, was required to provide adequate warnings or instructions about the dangers and risks associated with the use of its cow's milk-based products with preterm infants, including but not limited to the risk of NEC, devastating in ury, and death.

118.    Defendant, MEAD JOHNSON's products contained cow's milk at the time they left the manufacturing facility.

119. At all times relevant herein, an ordinary consumer would not expect Defendant, MEAD JOHNSON's cow's milk-based products to carry a significant risk of devastating in ury and death from NEC.

120. At all times relevant herein, Defendant, MEAD JOHNSON, knew or should have known that cow's milk-based nutrition was unreasonably dangerous as it carried a significantly increased risk of premature and or low birth weight infants developing NEC, devastating in ury, and death.

121. At all times relevant herein, Defendant, MEAD JOHNSON, knew or should have known that the risks involved in feeding a premature and or low birth weight infant cow's milk-based nutrition outweighed the benefits.

122. At all times relevant herein, Defendant, MEAD JOHNSON, knew or should have known that human milk-based nutrition did not carry the same risks of NEC, devastating in ury, and death that its own cow's milk-based products do.

123. y designing its products with cow's milk ingredients, Defendant, MEAD JOHNSON, was required to warn of the unreasonable risk of harm posed by those ingredients, specifically including the significantly increased risk of NEC, devastating in ury, and death.

124. Defendant, MEAD JOHNSON's failure to warn of the unreasonable risk of harm posed by the ingredients of its products made the products at issue in this litigation unreasonably dangerous.

125. Defendant, MEAD JOHNSON, knew or should have known that its cow's milk-based premature infant products would be fed unaltered to premature infants like aby Joey.

126. Had physicians and healthcare providers known of the extreme risk associated with feeding premature and or low birth weight infants cow's milk-based formula, they would not have fed aby Joey those products.

127. Had aby Joey's physicians and health care providers known of the extreme risk associated with feeding him cow's milk-based formula, given his particular condition, they would not have fed him those products.

128. Had aby Joey's parents known of the significant risks of feeding aby Joey cow's milk-based formula, they would not have allowed such products to be fed to their child.

129. Had aby Joey's parents known of the significant risks of feeding aby Joey cow's milk-based formula, they would not have fed such products to their child.

130. At all times relevant herein, Defendant, MEAD JOHNSON, knew or should have known that its cow's milk-based product might cause premature and or low birth weight infants to develop NEC, devastating in ury, and or death, yet it failed to provide adequate warnings of those risks. Among other risks, Defendant, MEAD JOHNSON:

    a. Failed to warn that cow's milk-based products significantly increased the risk of NEC, devastating in ury, and death in preterm and or low birth weight infants

    b. Failed to warn that cow's milk-based products were unsafe and contraindicated for preterm and or low birth weight infants

    c. Failed to warn of the particular risks of cow's milk-based products given aby Joey's gestational age, weight, and particular risk of NEC

    d. Carried warnings and instructions that were severely inadequate, vague, and confusing

    e. Failed to carry a large and prominent black box type warning that its cow's milk-based products were known to significantly increase the risk of NEC, devastating in uries, and death when compared to human milk in preterm and or low birth weight infants

f. Failed to disclose well-established studies and or statistical evidence that evidenced the causal connection between cow's milk-based products and NEC, devastating in uries, and or death in preterm and or low birth weight infants

g. Failed to insert a warning and or instruction to healthcare professionals and other medical staff in the hospital that parents should be provided information necessary to make an informed choice about whether to allow their babies to be fed Enfamil, notwithstanding its substantial risks

h. Failed to provide a warning in a method reasonably calculated or expected to reach the baby's parents

i. Failed to provide proper instructions or guidelines or studies, or data on when and how to feed Enfamil to preterm and or low birth weight infants in order to decrease the risk of NEC, devastating in uries, and death

. Failed to cite to or utilize current up-to-date medical data on the proper and safe use of its product

k. Failed to otherwise warn physicians and healthcare providers of the extreme risk associated with feeding preterm and or low birth weight infants cow's milk-based products

l. Failed to send out Dear Dr. letters warning of the risks of NEC, devastating in uries, and death and the current scientific research and data to guide the hospitals and physicians to better care for the extremely preterm infants

m. Failed to instruct or warn that an exclusive human milk-based diet significantly decreased the risk of NEC, devastating in uries, and or death when compared to a diet containing cow's milk

n. Failed to require or recommend hospitals and or physicians inform parents that Enfamil significantly increased the risk of NEC, devastating in uries, and death before allowing the product to be fed to their preterm and or low birth weight infants and or

o. Failed to establish a label or instruction that would correspond to the current science regarding the positive risk-benefit profile.

131. As a direct result of the inadequacy of Defendant, MEAD JOHNSON's warnings, aby Joey was fed Enfamil Premature Infant Formula, Defendant, MEAD JOHNSON's cow's milk-based product.

132.    As a direct and proximate result of ingesting Enfamil cow's milk-based products, aby Joey developed in uries of a personal and pecuniary nature, including but not limited to NEC, short gut syndrome, and cerebral palsy.

WHEREFORE, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, demands udgment against Defendants, MEAD JOHNSON & CO., and MEAD JOHNSON NUTRITION COMPANY, for a sum in excess of the urisdictional limits of the Circuit Court of Cook County, Illinois.

## COUNT IV: STRICT LIA ILITY FOR FAILURE TO WARN
## FAMILY E PENSE ACT

133.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

134.    Plaintiff, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, has become obligated for medical care, support, and expenses for JOSEPH KOETH, a Minor, and hereby makes a claim for same pursuant to 750 ILCS 665-15, commonly known as The Family Expense Act.

WHEREFORE, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, demands udgment against Defendants, MEAD JOHNSON & CO., and MEAD JOHNSON NUTRITION COMPANY, for a sum in excess of the urisdictional limits of the Circuit Court of Cook County, Illinois.

## COUNT V: NE LI ENCE

135.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

136.    At all times relevant herein, Defendant, MEAD JOHNSON, as the manufacturer and or seller of the products at issue in this litigation, owed a duty to exercise reasonable care to design,

test, manufacture, inspect, and distribute a product free of unreasonable risk of harm to users when such products were used in their intended manner and for their intended purpose.

137.    At all times relevant herein, Defendant, MEAD JOHNSON, as the manufacturer and or seller of the products at issue in this litigation, knew or reasonably should have known that its cow's milk-based infant products significantly increased the risk of NEC, devastating in uries, and death.

138.    At all times relevant herein, Defendant, MEAD JOHNSON, as the manufacturer and or seller of the products at issue in this litigation, had a duty to act as a reasonably prudent manufacturer to aggressively and promptly take significant actions to reduce the risks of its products causing NEC, devastating in uries, and or death in premature and or low birth weight infants.

139.    At all times relevant herein,   aby Joey, his parents, and his health care providers used the products at issue in their intended manner and for their intended purpose.

140.    Defendant, MEAD JOHNSON, failed to act in a reasonably prudent manner and breached their duty by:

   a.   Failing to warn that Enfamil is a cow's milk-based product

   b.   Failing to warn that cow's milk-based products significantly increase the risk of NEC, devastating in uries, and death in preterm and or low birth weight infants

   c.   Failing to warn that cow's milk-based products are unsafe and or contraindicated for preterm infants like   aby Joey

   d.   Carrying warnings and instructions that were severely inadequate, vague, and confusing

   e.   Failing to carry a large and prominent   black box   type warning that their cow's milk-based products were known to significantly increase the risk of NEC, devastating in uries, and death when compared to breast milk in preterm and or low birth weight infants

f.   Failing to provide well-established studies and or statistical evidence that evidenced the causal connection between cow's milk-based products and NEC, devastating in uries, and death in preterm and or low birth weight infants

g.   Failing to insert a warning or instruction to healthcare professionals and other medical staff in the hospital that parents should be provided information necessary to make an informed choice about whether to allow their babies to be fed Mead Johnson's products, notwithstanding their substantial risks

h.   Failing to provide a warning in a method reasonably calculated and or expected to reach the baby's parents

i.    Failing to collect data to determine if its products were safe for preterm and or low birth weight infants

.    Failing to collect data to determine when and how its products could be used safely

k.   Failing to utilize the significant body of peer-reviewed research to develop instructions and or warnings on how and when its products should be used in order to protect babies from NEC, devastating in uries, and death

l.    Continuing to utilize outdated and ineffective instructions and warnings knowing they were inadequate based on modern science

m.  Failing to continuously and vigorously study its cow's milk-based products in order to avoid NEC, devastating in uries, and or death in preterm and or low birth weight infants

n.   Failing to develop evidence-based guidelines or instructions to decrease the risk of its products causing NEC, devastating in uries, and death

o.   Failing to establish a standard and or protocol for hospitals and physicians with the elements to assure safe use

p.   Failing to properly and thoroughly identify the hazards associated with its products to minimize its risks to preterm and or low birth weight infants

q.   Failing to take reasonable steps to protect preterm and or low birth weight infants from developing NEC, devastating in uries, and or death when feeding Enfamil

r.   Failing to properly work with physicians and hospitals to develop ways to reduce NEC, devastating in uries, and death when Enfamil was fed to preterm and or low birth weight infants

s.   Failing to market and or sell its products in a way which would protect the preterm and or low birth weight infants from NEC, devastating in uries, and death

t. Failing to provide proper training or information to health care providers for safe use of its products

u. Failing to take reasonable precautions to prevent preterm and or low birth weight infants from developing NEC, devastating in uries, and death

v. Failing to properly or promptly notify the FDA that its cow's milk-based products significantly increased the risk of NEC, devastating in uries, and death in preterm and or low birth weight infants

w. Failing to properly perform a type of pharmacovigilance for the scientific process of collection, detection, assessment, monitoring, and prevention of adverse effects for its cow's milk-based formulas

x. Improperly creating agreements with hospitals whereby its products would be over-utilized to the detriment of the preterm and or low birth weight infants

y. Improperly promoting continued use of its products in hospitals despite knowing of the great harm they were causing to preterm and or low birth weight infants

z. Improperly providing free and or reduced-price Enfamil products to hospitals

aa. Failing to establish a label or instruction that would correspond to the current science regarding the positive risk-benefit profile

bb. Failing to provide or produce periodic or yearly safety reports

cc. Failing to provide or produce periodic or yearly risk-benefit analysis for use of its products

dd. Failing to provide or produce yearly safety update reports and or

ee. Failing to develop comprehensive mitigation strategies to reduce the risk of NEC, devastating in uries, and or death in its products.

141. As a direct and proximate result of aby Joey ingesting Enfamil cow's milk-based products, he developed in uries of a personal and pecuniary nature, including but not limited to NEC, short gut syndrome, and cerebral palsy.

WHEREFORE, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, demands udgment against Defendants, MEAD JOHNSON & CO., and MEAD JOHNSON NUTRITION

COMPANY, for a sum in excess of the urisdictional limits of the Circuit Court of Cook County, Illinois.

### COUNT VI: NE LI ENCE FAMILY E PENSE ACT

142.  Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

143.  Plaintiff, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, has become obligated for medical care, support, and expenses for JOSEPH KOETH, a Minor, and hereby makes a claim for same pursuant to 750 ILCS 665-15, commonly known as The Family Expense Act.

WHEREFORE, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, demands udgment against Defendants, MEAD JOHNSON & CO., and MEAD JOHNSON NUTRITION COMPANY, for a sum in excess of the urisdictional limits of the Circuit Court of Cook County, Illinois.

### COUNT VII: INTENTIONAL MISREPRESENTATION

144.  Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

145.  At all times relevant to this action, aby Joey, by and through his physicians, medical professionals, medical staff, nurses, and his family, used the products at issue in their intended manner and for their intended purpose.

146.  Defendant, MEAD JOHNSON, intentionally made false statements of material fact on an ongoing and repeated basis to consumers, physicians, and parents in their advertising and promotional materials prior to the time aby Joey was fed its products, including but not limited to:

    a.  That its cow's milk-based products were safe for preterm and or low birth weight infants

    b.  That its cow's milk-based products were beneficial to preterm and or low birth weight infants

    c.  That its cow's milk-based products were necessary to the growth and nutrition of preterm and or low birth weight infants

    d.  That its products had no serious side effects

    e.  That cow's milk-based products were similar or equivalent to breast milk and or

    f.  That its product was gentle on infants' stomachs

    g.  That its product was the best choice based on trusted sources from pediatricians, hospitals, and mothers and or

    h.  That its products were based on up-to-date science, which made them safe for preterm and or low birth weight infants.

147.    At all times relevant herein, Defendant, MEAD JOHNSON, believed and or knew the above statements to be false.

148.    At all times relevant herein, Defendant, MEAD JOHNSON's misrepresentations were intended to induce hospitals, health care providers, and parents to provide Enfamil Premature Infant Formula to babies, including aby Joey.

149.    Defendant, MEAD JOHNSON's misrepresentations did in fact induce aby Joey's parents to allow their child to be fed Defendant, MEAD JOHNSON's Enfamil cow's-milk based products in ustifiable reliance on all the messaging they received about formula feeding, including, directly or indirectly, Defendant, MEAD JOHNSON's messaging.

150.    As a direct result, Defendant, MEAD JOHNSON's products were fed to aby Joey.

151.    As a direct and proximate result of aby Joey ingesting Enfamil cow's milk-based products, he developed in uries of a personal and pecuniary nature, including but not limited to NEC, short gut syndrome, and cerebral palsy.

WHEREFORE, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, demands  udgment against Defendants, MEAD JOHNSON & CO., and MEAD JOHNSON NUTRITION COMPANY, for a sum in excess of the  urisdictional limits of the Circuit Court of Cook County, Illinois.

## COUNT VIII: INTENTIONAL MISREPRESENTATION   FAMILY E  PENSE ACT

152.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

153.     Plaintiff, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, has become obligated for medical care, support, and expenses for JOSEPH KOETH, a Minor, and hereby makes a claim for same pursuant to 750 ILCS   665-15, commonly known as The Family Expense Act.

WHEREFORE, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, demands  udgment against Defendants, MEAD JOHNSON & CO., and MEAD JOHNSON NUTRITION COMPANY, for a sum in excess of the  urisdictional limits of the Circuit Court of Cook County, Illinois.

## COUNT I  : NE  LI  ENT MISREPRESENTATION

154.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

155.     At all times relevant to this action,   aby Joey, by and through his physicians, medical professionals, medical staff, nurses, and his family, used the products at issue in their intended manner and for their intended purpose.

156.     At all times relevant herein, Defendant, MEAD JOHNSON, as the manufacturer and or seller of the products at issue in this litigation, owed a duty to provide truthful, accurate, fulsome

information about the risks and benefits of using its products when used in the intended manner and for the intended purpose.

157. Defendant, MEAD JOHNSON, breached its duty by negligently and or carelessly making false statements of material fact to consumers, physicians, and medical staff in its advertising and promotional materials prior to the time aby Joey was fed Enfamil, including but not limited to:

    a. That its cow's milk-based products were safe for preterm and or low birth weight infants

    b. That its cow's milk-based products were beneficial to preterm and or low birth weight infants

    c. That its cow's milk-based products were necessary to the growth and nutrition of preterm and or low birth weight infants

    d. That its products had no serious side effects

    e. That cow's milk-based products were similar or equivalent to breast milk and or

    f. That its product was gentle on infants' stomachs

    g. That its product was the best choice based on trusted sources from pediatricians, hospitals, and mothers and or

    h. That its products were based on up-to-date science, which made them safe for preterm and or low birth weight infants.

158. At all times relevant herein, Defendant, MEAD JOHNSON, knew, reasonably should have known, and or should have determined that the above-referenced statements were false.

159. Defendant, MEAD JOHNSON's misrepresentations were intended to induce hospitals and health care providers, including aby Joey's hospital and health care providers, to provide Enfamil to infants, including aby Joey.

160. At all times relevant herein, Defendant, MEAD JOHNSON's misrepresentations did in fact induce aby Joey's mother to allow her child to be fed Enfamil, in ustifiable reliance on

all the messaging she received about formula feeding, including Defendant, MEAD JOHNSON's messaging.

161.    As a direct and proximate result of aby Joey ingesting Enfamil cow's milk-based products, he developed in uries of a personal and pecuniary nature, including but not limited to NEC, short gut syndrome, and cerebral palsy.

WHEREFORE, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, demands udgment against Defendants, MEAD JOHNSON & CO., and MEAD JOHNSON NUTRITION COMPANY, for a sum in excess of the urisdictional limits of the Circuit Court of Cook County, Illinois.

### COUNT : NE LI ENT MISREPRESENTATION FAMILY E PENSE ACT

162.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

163.    Plaintiff, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, has become obligated for medical care, support, and expenses for JOSEPH KOETH, a Minor, and hereby makes a claim for same pursuant to 750 ILCS 665-15, commonly known as The Family Expense Act.

WHEREFORE, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, demands udgment against Defendants, MEAD JOHNSON & CO., and MEAD JOHNSON NUTRITION COMPANY, for a sum in excess of the urisdictional limits of the Circuit Court of Cook County, Illinois.

### COUNT I: CONSUMER FRAUD AND DECEPTIVE USINESS PRACTICES ACT

164.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

165. Plaintiff brings this count pursuant to the Illinois Consumer Fraud and Deceptive usiness Practices Act. 815 ILCS 505.

166. Upon information and belief, Defendant, MEAD JOHNSON, engaged in deceptive acts and or practices, by making the following false statements of material fact on an ongoing and repeated basis prior to the time aby Joey was fed its products:

a. That its cow's milk-based products were safe for preterm and or low birth weight infants

b. That its cow's milk-based products were beneficial to preterm and or low birth weight infants

c. That its cow's milk-based products were necessary to the growth and nutrition of preterm and or low birth weight infants

d. That its products had no serious side effects
e. That cow's milk-based products were similar or equivalent to breast milk

f. That its product was gentle on infants' stomachs

g. That Enfamil was safe and more like breast milk than other infant products and or

h. That its product was the best choice based on trusted sources from pediatricians, hospitals, and mothers and or

i. That its products were based on up-to-date science, which made them safe for preterm and or low birth weight infants.

167. Defendant, MEAD JOHNSON, further engaged in deceptive acts or practices, by omitting the material fact that their products significantly increased the risk of NEC, devastating in uries, and or death in premature and or low birth weight infants.

168. The aforementioned deceptive acts and or omissions occurred in the course of conduct involving commerce.

169. Defendant, MEAD JOHNSON's deceptive practices were intended to induce Plaintiff, Katina Koeth, to allow aby Joey to be fed Defendant, MEAD JOHNSON's Enfamil, in reliance on

all the messaging she received about formula feeding, including, directly or indirectly, Defendant, MEAD JOHNSON's messaging.

170. Defendant, MEAD JOHNSON's deceptive practices were intended to induce hospitals and health care providers, including aby Joey's hospital and health care providers, to provide Enfamil to infants, including aby Joey.

171. Had Defendant, MEAD JOHNSON, not committed these deceptive practices, aby Joey would not have been exposed to Defendant, MEAD JOHNSON's unreasonably dangerous cow's milk-based product, Enfamil.

172. As a direct and proximate result of aby Joey ingesting Enfamil cow's milk-based products, he developed in uries of a personal and pecuniary nature, including but not limited to NEC, short gut syndrome, and cerebral palsy.

WHEREFORE, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, demands udgment against Defendants, MEAD JOHNSON & CO., and MEAD JOHNSON NUTRITION COMPANY, for a sum in excess of the urisdictional limits of the Circuit Court of Cook County, Illinois.

## COUNT II: CONSUMER FRAUD AND DECEPTIVE USINESS PRACTICES ACT FAMILY E PENSE ACT

173. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

174. Plaintiff, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, has become obligated for medical care, support, and expenses for JOSEPH KOETH, a Minor, and hereby makes a claim for same pursuant to 750 ILCS 665-15, commonly known as The Family Expense Act.

WHEREFORE, KATINA KOETH, Mother and Next Friend of JOSEPH KOETH, a Minor, demands udgment against Defendants, MEAD JOHNSON & CO., and MEAD JOHNSON NUTRITION COMPANY, for a sum in excess of the urisdictional limits of the Circuit Court of Cook County, Illinois.

Dated:  November 16, 2021                    Respectfully submitted,

                                           y KATINA KOETH, Individually, and as Mother and Next Friend of JOSEPH KOETH, a Minor,

                                           y their attorneys,

                           s *Elizabeth A. Kaveny*

Elizabeth A. Kaveny
Jeffrey J. Kroll
Ava  .  ehringer
KAVENY + KROLL, LLC
One Prudential Plaza
130 E. Randolph St., Suite 2800
Chicago, IL 60601
Phone: 312-761-5585
Elizabeth@kavenykroll.com
 effrey@kavenykroll.com
ava@kavenykroll.com
Firm I.D. No. 63499

Levin, Ro as, Camassar, & Reck, LLC
CT Juris No. 441679
Stephen M. Reck
Jose Ro as
Scott D. Camassar
Paul Levin
391 Norwich-Westerly Rd
North Stonington, CT 06359
Phone: 860-535-4040
Facsimile: 860-535-4040
attorneyreck@yahoo.com
ro as@ctlawyer.net
sdcamassar@gmail.com
plevin1111@aol.com
*Pro Hac Vice* forthcoming

Page 33 of 33

 **For Consumers (https://www.enfamil.com/)**

  **FOR HEALTHCARE PROFESSIONALS** | Products (/s/products) ⌄ | Resources (/s/resources) ⌄ | Medical Education (/s/hcpm-subpage/a4b4J000000JFeGQAW) | Samples (/s/samples) ⌄ | Nutrition & Health ⌄ | 🛒 | 🔍

HOME (/s) > PRODUCTS (/s/products) > Enfamil* Premature 24 Cal/fl oz HP





# Enfamil® Premature 24 Cal/fl oz HP

Milk-based infant formula with extra protein for premature or low birth weight infants who are not breastfed

## Indication 

Enfamil Premature 24 Cal/fl oz High Protein (HP) is a milk-based infant formula specifically formulated to meet the unique nutritional needs of rapidly growing premature or low birth weight infants who do not receive human milk.* The Enfamil Premature Nutrition portfolio is the only premature infant formula line designed to meet the latest Global Expert Recommendations for all labeled nutrients. Protein is a major driver of lean mass growth and neuro-cognitive outcomes, and Enfamil Premature Nutrition supports these protein needs.

## Additional Usage Guidelines 

When more than 12 fl oz (355 mL) of 24 Calories/fl oz product is used per day, which may occur in larger infants weighing over 2500 g (5.5 lbs) consuming only Enfamil Premature, intake of some nutrients (eg, fat soluble vitamins) may be excessive. In such circumstances, it should be used only at the direction and under the supervision of a doctor.    Enfamil (/s/record?type=product&name=Enfamil+NeuroPro™+EnfaCare®)    ⚲ (/s/record?type=product&name=Enfamil+NeuroPro™+EnfaCare®)    NeuroPro EnfaCare (/s/record?type=product&name=Enfamil+NeuroPro™+EnfaCare®)    ⚲ (/s/record?type=product&name=Enfamil+NeuroPro™+EnfaCare®) may be a product to consider in such circumstances.

*Increased caloric density, protein, and some vitamins and minerals compared to standard term formula to help support weight and growth in babies born prematurely.

## Ingredients 

**Ingredients: Ready To Feed (2 fl oz Nursette bottles):** Water, nonfat milk, corn syrup solids, whey protein concentrate, lactose, medium chain triglycerides (MCT oil), soy oil, high oleic sunflower oil and less than 0.5%: *Mortierella alpina* oil*, *Crypthecodinium cohnii* oil⁺, calcium phosphate, calcium hydroxide, potassium citrate, sodium chloride, calcium carbonate, magnesium phosphate, calcium chloride, sodium citrate, ferrous sulfate, zinc sulfate, cupric sulfate, potassium iodide, sodium selenite, sodium ascorbate, vitamin E acetate, niacinamide, calcium pantothenate, vitamin A palmitate, vitamin $D_3$, thiamin hydrochloride, riboflavin, vitamin $B_6$ hydrochloride, folic acid, vitamin $K_1$, biotin, vitamin $B_{12}$, rice starch, inositol, mono- and diglycerides, soy lecithin, choline chloride, nucleotides (cytidine 5′-monophosphate, adenosine 5′-monophosphate, disodium uridine 5′-monophosphate, disodium guanosine 5′-monophosphate), taurine, l-carnitine.

Exhibit A

*A source of arachidonic acid (ARA).
†A source of docosahexaenoic acid (DHA).

**POTENTIAL ALLERGENS**

Enfamil Premature 24 Cal HP contains milk and soy.

## Nutrients



| (Normal Dilution) | Per 100 Calories | Per 100 mL |
|---|---|---|
| Protein, g | 3.6 | 2.9 |
| Fat, g | 5 | 4.1 |
| Linoleic acid, mg | 810 | 660 |
| Carbohydrate, g | 10.5 | 8.5 |
| Water, g | 108 | 88 |
| **Vitamins/Other Nutrients** | | |
| Vitamin A, IU | 1350 | 1100 |
| Vitamin D, IU | 300 | 240 |
| Vitamin E, IU | 6.3 | 5.1 |
| Vitamin K, mcg | 9 | 7.3 |
| Thiamin (Vitamin $B_1$), mcg | 200 | 162 |
| Riboflavin (Vitamin $B_2$), mcg | 300 | 240 |
| Vitamin $B_6$, mcg | 150 | 122 |
| Vitamin $B_{12}$, mcg | 0.25 | 0.2 |
| Niacin, mcg | 4000 | 3200 |
| Folic acid (Folacin), mcg | 40 | 32 |
| Pantothenic acid, mcg | 1200 | 970 |
| Biotin, mcg | 4 | 3.2 |
| Vitamin C (Ascorbic acid), mg | 20 | 16.2 |
| Choline, mg | 24 | 19.5 |
| Inositol, mg | 44 | 36 |
| **Minerals** | | |
| Calcium, mg | 165 | 134 |
| Phosphorus, mg | 90 | 73 |
| Magnesium, mg | 9 | 7.3 |
| Iron, mg | 1.8 | 1.46 |
| Zinc, mg | 1.5 | 1.22 |

| | | |
|---|---|---|
| Manganese, mcg | 6.3 | 5.1 |
| Copper, mcg | 120 | 97 |
| Iodine, mcg | 25 | 20 |
| Selenium, mcg | 5 | 4.1 |
| Sodium, mg | 70 | 57 |
| Potassium, mg | 98 | 80 |
| Chloride, mg | 106 | 86 |

Product nutrient values and ingredients are subject to change. Please see product label for current information.

| Nutrient Density | 24 Calories/fl oz |
|---|---|
| Protein (% Calories) | 14 |
| Whey:Casein Ratio | 80:20 |
| Fat (% Calories) | 44 |
| Carbohydrate (% Calories) | 42 |
| Potential Renal Solute Load (mOsm/100 Calories)[9] | 32 |
| Potential Renal Solute Load (mOsm/100 mL)[9] | 26 |
| Osmolality (mOsm/kg water) | 300 |
| Osmolarity (mOsm/L) | 260 |
| Lactose-free | No |

**AMINO ACID COMPOSITION**

ESSENTIAL AMINO ACIDS

| | mg/100 Cal | mg/100 mL Liq |
|---|---|---|
| Histidine | 83 | 67 |
| Isoleucine | 220 | 177 |
| Leucine | 400 | 320 |
| Lysine | 330 | 270 |
| Methionine | 79 | 64 |
| Cysteine | 83 | 67 |
| Phenylalanine | 137 | 110 |
| Tyrosine | 126 | 102 |
| Threonine | 250 | 200 |

| | | |
|---|---|---|
| Tryptophan | 69 | 56 |
| Valine | 220 | 177 |

NONESSENTIAL AMINO ACIDS

| | mg/100 Cal | mg/100 mL Liq |
|---|---|---|
| Arginine | 101 | 81 |
| Alanine | 176 | 142 |
| Aspartic Acid | 390 | 310 |
| Glutamic Acid | 700 | 560 |
| Glycine | 72 | 58 |
| Proline | 260 | 210 |
| Serine | 210 | 165 |

## Feeding Options And Preparation



**FEEDING INFORMATION FOR ENFAMIL PREMATURE 24 Cal/fl oz HP**

**Guidelines alternate feeding needs**

Download dilution information (https://salesforce-hcp-prod.s3.eu-central-1.amazonaws.com/Salesforce/HCPM/pdf/pdp/mjn2445lb6bmornusettepreppdf.pdf)

**NURSETTE® BOTTLES**

**A baby's health depends on carefully following the instructions below. Use only as directed by a medical professional.** Proper hygiene, preparation, dilution, use and storage are important when preparing infant formula.

**2 fl oz Bottles**

1. **Inspect** each bottle for signs of damage.
2. Wash hands thoroughly with soap and water before preparing bottle for feeding.
3. **SHAKE BOTTLE WELL** and remove cap.
4. Attach nipple unit (not included).

If instructed to use the scoop in the can, each unpacked, level scoop delivers **approximately 14.5 g** of powder. Store **DRY** scoop in can.

**Failure to follow these instructions could result in severe harm. Open bottles can spoil quickly.**
Either feed immediately or replace cap and store in refrigerator at 35–40°F (2–4°C) for no longer than 24 hours. Do not use prepared formula if it is unrefrigerated for more than a total of 2 hours. Do not freeze opened bottle. After feeding begins, use formula within 1 hour or discard.
**Warning: Do not use a microwave oven to warm formula. Serious burns may result.**
**Storage: Store unopened bottles at room temperature. Avoid excessive heat and prolonged exposure to light. Do not freeze.**

**THIS PRODUCT SHOULD BE USED ONLY AS DIRECTED BY THE BABY'S DOCTOR.**

**USE BY DATE ON CARTON AND BOTTLE LABEL.**

**DO NOT USE IF CAP RING IS BROKEN OR MISSING.**

DO NOT ACCEPT IF PACKAGE HAS BEEN OPENED.

## Product Forms And Ordering Information



ENFAMIL® PREMATURE 24 Cal/fl oz HP IS AVAILABLE IN READY-TO-USE NURSETTE® BOTTLES

**When using this information, please note the following:**
**Coding systems and reimbursement allowable rates vary by payer:**

- Medicare Part B uses HCPCS (Healthcare Common Procedure Coding System) to group products
- Medicaid systems vary by state; some use HCPCS while others use NDC format code or systems of their own—contact your state provider for more information
- Private health insurance and managed care companies may use HCPCS, NDC format code or their own system—contact your provider for more information



**Enfamil® Premature 24 Cal/fl oz HP, Ready-to-Feed**

Item #: 156601
Unit Size: 2 fl oz bottle
Product Yield/Unit (fl oz): 2
HCPCS Code: B4160

Description: RTF, 24 Cal/fl oz
Calories/Unit: 48
Case: 48 bottles per case
NDC Format Code: 00087-5115-74

## Product Benefits



**Enfamil Premature 24 Cal/fl oz HP is specifically formulated to meet the unique nutritional needs of rapidly growing premature or low birth weight infants**

- 3.6 g of protein/100 Calories—appropriate for growth and development[1-3]
- Fat blend is 40% medium-chain triglycerides (MCT) oil to promote fat absorption[4,5]
- Carbohydrate blend of 60% corn syrup solids (glucose polymers) and 40% lactose that is easily digested and helps avoid overloading the premature infant's capacity to digest lactose
- Provides approximately 2 mg iron/kg body weight when fed at 120 Cal/kg body weight per day
- 80:20 whey-to-casein ratio patterned after early human milk*

**In a multi-center study, 64% of preterm infants had low vitamin D† concentrations at birth[6]**

**Meets the 2014 Global Expert Recommendations for all labeled nutrients, including vitamin D[1]**

- Calcium, phosphorus and vitamin D within the ranges recommended by experts to help support bone mineralization and growth[1];
- Calcium: phosphorus ratio = 1.83:1
- DHA at 0.34% of total fatty acids, similar to the worldwide breast milk average*[7], to help support brain and eye development and to help support blood DHA concentration[8]

**Additional product features:**

- Kosher, Halal

*Whey-to-casein ratio 3-5 days after lactation begins.
†Serum 25 (OH) D concentrations <50 nmol/L at birth.
*Average amount of DHA in worldwide breast milk is 0.32% ± 0.22% (mean ± standard deviation of total fatty acids) based on

**Contact Mead Johnson**

**Contact a Mead Johnson representative to request information and samples**

Contact Us

**Help parents receive supplemental nutrition approved formulas**

Special Supplemental Nutrition Program for Women, Infants, and Children

**Read More**

**Savings and support programs to share with parents**

Mead Johnson offers a range of programs to help parents save on formula for their infants and toddlers.

**Read More**

**A complete portfolio for premature and low birth weight infants**

**Read More**

## References



Privacy Policy (/s/privacy-policy)

FAQ (/s/faq)

Contact Us (/s/contact-us)

Terms of Use (/s/terms-of-use)

Reckitt.com (https://www.reckitt.com/)

Sitemap (/s/sitemap)

Do Not Sell My Information (https://privacyportal-eu-cdn.onetrust.com/dsarwebform/402f6106-e8f6-48e2-9a63-c8534c7b1778/330b1935-5dd3-401f-855f-104bbb5a7a27.html)

Intended for U.S. Healthcare Professionals Only. ©2004, 2021 Mead Johnson & Company, LLC. All Rights Reserved.

For Consumers (https://www.enfamil.com/)

  

FOR HEALTHCARE PROFESSIONALS | Products | Resources (/s/resources) | Medical Education (/s/hcpm-subpage/a4b4J000000JFeGQAW) | Samples (/s/samples) | Nutrition & Health 

HOME (/s) > PRODUCTS (/s/products) > Enfamil®Premature 20 Cal/fl oz



# Enfamil®Premature 20 Cal/fl oz

Milk-based infant formula with 20 Calories/fl oz for premature or low birth weight infants who are not being breastfed

## Indication 

Enfamil Premature 20 Cal/fl oz is a milk-based infant formula specifically formulated to meet the unique nutritional needs of rapidly growing premature or low birth weight infants who do not receive human milk.* The Enfamil Premature Nutrition portfolio is the only premature infant formula line designed to meet the latest Global Expert Recommendations for all labeled nutrients. Protein is a major driver of lean mass growth and neuro-cognitive outcomes, and Enfamil Premature Nutrition supports these protein needs.

## Additional Usage Guidelines 

When more than 14 fl oz of 20 Calories/fl oz product is used per day, which may occur in larger infants weighing over 2500 g (5.5 lbs) consuming only Enfamil Premature, intake of some nutrients (eg, fat soluble vitamins) may be excessive. In such circumstances, it should be used only at the direction and under the supervision of a doctor.   Enfamil® NeuroPro EnfaCare® (/s/record?type=product&name=Enfamil+NeuroPro™+EnfaCare®) may be a product to consider in such circumstances.

*Increased caloric density, protein and some vitamins and minerals compared to standard term formula to help support weight and growth in babies born prematurely.

## Ingredients 

**Ingredients: Ready To Feed (2 fl oz Nursette bottles):** Water, nonfat milk, corn syrup solids, whey protein concentrate, lactose, medium chain triglycerides (MCT oil), soy oil, high oleic sunflower oil and less than 0.5%: *Mortierella alpina* oil*, *Crypthecodinium cohnii* oil*, calcium phosphate, calcium hydroxide, potassium citrate, sodium chloride, calcium carbonate, magnesium phosphate, calcium chloride, potassium chloride, ferrous sulfate, zinc sulfate, cupric sulfate, potassium iodide, sodium selenite, rice starch, sodium ascorbate, vitamin E acetate, niacinamide, calcium pantothenate, vitamin A palmitate, thiamin hydrochloride, riboflavin, vitamin B₆ hydrochloride, folic acid, vitamin K₁, biotin, vitamin B₁₂, mono- and diglycerides, inositol, soy lecithin, choline chloride, vitamin D₃, nucleotides (cytidine 5'-monophosphate, disodium uridine 5'-monophosphate, adenosine 5'-monophosphate, disodium guanosine 5'-monophosphate), taurine, L-carnitine.

*A source of arachidonic acid (ARA).
*A source of docosahexaenoic acid (DHA).

**POTENTIAL ALLERGENS**

Enfamil Premature 20 Cal/fl oz contains milk and soy

## Nutrients

| (Normal Dilution) | Per 100 Calories | Per 100 mL |
|---|---|---|
| Protein, g | 3.3 | 2.2 |
| Fat, g | 5 | 3.4 |
| Linoleic acid, mg | 810 | 550 |
| Carbohydrate, g | 10.8 | 7.3 |
| Water, g | 132 | 89 |
| **Vitamins/Other Nutrients** | | |
| Vitamin A, IU | 1350 | 910 |
| Vitamin D, IU | 300 | 200 |
| Vitamin E, IU | 6.3 | 4.3 |
| Vitamin K, mcg | 9 | 6.1 |
| Thiamin (Vitamin B₁), mcg | 200 | 135 |
| Riboflavin (Vitamin B₂), mcg | 300 | 200 |
| Vitamin B₆, mcg | 150 | 101 |
| Vitamin B₁₂, mcg | 0.25 | 0.17 |

 

Exhibit B

| | | |
|---|---|---|
| Niacin, mcg | 4000 | 2700 |
| Folic acid (Folacin), mcg | 40 | 27 |
| Pantothenic acid, mcg | 1200 | 810 |
| Biotin, mcg | 4 | 2.7 |
| Vitamin C (Ascorbic acid), mg | 20 | 13.5 |
| Choline, mg | 24 | 16.2 |
| Inositol, mg | 44 | 30 |
| **Minerals** | | |
| Calcium, mg | 165 | 112 |
| Phosphorus, mg | 90 | 61 |
| Magnesium, mg | 9 | 6.1 |
| Iron, mg | 1.8 | 1.22 |
| Zinc, mg | 1.5 | 1.01 |
| Manganese, mcg | 6.3 | 4.3 |
| Copper, mcg | 120 | 81 |
| Iodine, mcg | 25 | 16.9 |
| Selenium, mcg | 5 | 3.4 |
| Sodium, mg | 70 | 47 |
| Potassium, mg | 98 | 66 |
| Chloride, mg | 106 | 72 |

Product nutrient values and ingredients are subject to change.

| Nutrient Density | 20 Calories/fl oz |
|---|---|
| Protein (% Calories) | 13 |
| Whey:Casein Ratio | 80:20 |
| Fat (% Calories) | 44 |
| Carbohydrate (% Calories) | 43 |
| Potential Renal Solute Load (mOsm/100 Calories)$^\Psi$ | 30 |
| Potential Renal Solute Load (mOsm/100 mL)$^\Psi$ | 20 |
| Osmolality (mOsm/kg water) | 260 |
| Osmolarity (mOsm/L) | 230 |
| Lactose-free | No |

**AMINO ACID COMPOSITION**

| ESSENTIAL AMINO ACIDS | mg/100 Cal | mg/100 mL Liq |
|---|---|---|
| Histidine | 76 | 51 |
| Isoleucine | 200 | 134 |
| Leucine | 360 | 240 |
| Lysine | 310 | 200 |
| Methionine | 73 | 48 |
| Cysteine | 76 | 51 |
| Phenylalanine | 125 | 84 |
| Tyrosine | 116 | 77 |
| Threonine | 230 | 152 |
| Tryptophan | 64 | 42 |
| Valine | 200 | 134 |

| NONESSENTIAL AMINO ACIDS | mg/100 Cal | mg/100 mL Liq |
|---|---|---|

| | | |
|---|---|---|
| Arginine | 92 | 62 |
| Alanine | 162 | 108 |
| Aspartic Acid | 350 | 240 |
| Glutamic Acid | 640 | 430 |
| Glycine | 66 | 44 |
| Proline | 230 | 156 |
| Serine | 188 | 125 |

## Feeding Options And Preparation 

**FEEDING INFORMATION FOR ENFAMIL PREMATURE 20 CAL/FL OZ**

**Guidelines for alternate feeding needs**

Download dilution information (https://salesforce-hcp-prod.s3.eu-central-
1.amazonaws.com/Salesforce/HCPM/pdf/pdp/mjn2445lb6bmornursettepreppdf.pdf)

**NURSETTE® BOTTLES**

**A baby's health depends on carefully following the instructions below. Use only as directed by a medical professional.** Proper hygiene, preparation, dilution, use and storage are important when preparing infant formula.

**2 fl oz Bottles**

1. **Inspect** each bottle for signs of damage.
2. Wash hands thoroughly with soap and water before preparing bottle for feeding.
3. SHAKE BOTTLE WELL and remove cap. Attach nipple unit (not included).

**Failure to follow these instructions could result in severe harm. Opened bottles can spoil quickly.** Either feed immediately and store in refrigerator at 35–40°F (2–4°C) for no longer than 24 hours. Do not use opened bottle if it is unrefrigerated for more than a total of 2 hours. Do not freeze. After feeding begins, use formula within 1 hour or discard.

**Warning: Do not use a microwave oven to warm formula. Serious burns may result.**

**Storage:** Store unopened bottles at room temperature. Avoid excessive heat and prolonged exposure to light. Do not freeze.

THIS PRODUCT SHOULD BE USED ONLY AS DIRECTED BY THE BABY'S DOCTOR.

USE BY DATE ON CARTON AND BOTTLE LABEL.

DO NOT USE IF CAP RING IS BROKEN OR MISSING.

DO NOT ACCEPT IF PACKAGE HAS BEEN OPENED

## Product Forms And Ordering Information 

**ENFAMIL® PREMATURE 20 Cal/fl oz IS AVAILABLE IN READY-TO-FEED NURSETTE® BOTTLES**

**When using this information, please note the following:**
**Coding systems and reimbursement allowable rates vary by payer:**

- Medicare Part B uses HCPCS (Healthcare Common Procedure Coding System) to group products
- Medicaid systems vary by state; some use HCPCS while others use NDC format code or systems of their own—contact your state provider for more information
- Private health insurance and managed care companies may use HCPCS, NDC format code or their own system—contact your provider for more information



**Enfamil® Premature 20 Cal/fl oz, Ready-to-Feed**

Item #: 156401
Unit Size: 2 fl oz bottle
Product Yield/Unit (fl oz): 2
HCPCS Code: B4160

Description: RTF, 20 Cal/fl oz
Calories/Unit: 40
Case: 48 bottles per case
NDC Format Code: 00087-5115-70

## Product Benefits 

Enfamil Premature 20 Cal/fl oz is specifically formulated to meet the unique nutritional needs of rapidly growing premature or low birth weight infants

- 3.3 g of protein/100 Calories—appropriate for growth and development[1-3]
- Fat blend is 40% medium-chain triglycerides (MCT) oil to promote fat absorption[4,5]
- Carbohydrate blend of 60% corn syrup solids (glucose polymers) and 40% lactose that is easily digested and helps avoid overloading the premature infant's capacity to digest lactose
- Provides approximately 2 mg iron/kg body weight when fed at 120 Cal/kg body weight per day
- 80:20 whey-to-casein ratio patterned after early human milk*

**In a multicenter study, 64% of preterm infants had low vitamin D* concentrations at birth[6]**

**Meets the 2014 Global Expert Recommendations for all labeled nutrients, including vitamin D[1]**

- Calcium, phosphorus and vitamin D within the ranges recommended by experts to help support bone mineralization and growth:
  - Calcium:phosphorus ratio = 1.83:1
- DHA at 0.34% of total fatty acids, similar to the worldwide breast milk average*7, to help support brain and eye development and to help support blood DHA concentration8

**Additional product features:**

- Kosher, Halal

*Whey-to-casein ratio 3-5 days after lactation begins.
*Serum 25 (OH) D concentrations <50 nmol/L at birth.
*Average amount of DHA in worldwide breast milk is 0.32% ± 0.22% (mean ± standard deviation of total fatty acids) based on an analysis of 65 studies of 2,474 women.7

**Contact Mead Johnson**

Contact a Mead Johnson representative to request information and samples          **Contact Us**

**Help parents receive supplemental nutrition approved formulas**

Special Supplemental Nutrition Program for Women, Infants, and Children

**Read More**

**Savings and support programs to share with parents**

Mead Johnson offers a range of programs to help parents save on formula for their infants and toddlers.

**Read More**

**A complete portfolio for premature and low birth weight infants**

**Read More**

## References

Intended for U.S. Healthcare Professionals Only. ©2004, 2021 Mead Johnson & Company, LLC. All Rights Reserved.